## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **IN RE** | : | **Chapter 7** |
| | : | |
| **SILVIA YOVTCHEVA,** | : | |
| | : | **Bankruptcy No. 17-17779-AMC** |
| **DEBTOR** | : | |
| | : | |

Ashely M. Chan, United States Bankruptcy Judge

### OPINION

### I.    INTRODUCTION

When Silvia Yovtcheva ("Debtor") became entitled to receive $250,000 from the life insurance policy of her ex-husband shortly after filing this case, Terry Dershaw, the Chapter 7 trustee ("Trustee"), was statutorily required to collect the proceeds from the policy and distribute them to the Debtor's creditors. Although the Trustee was permitted to retain counsel to assist him with the legal tasks associated with executing his statutory duties under § 704(a), a significant portion of the work performed by the Trustee's counsel was actually nonlegal work that should have been performed by the Trustee as part of his statutory duties. Given the clear impropriety of this, the Court will significantly reduce the fees of the Trustee's counsel and intends to closely scrutinize whether the Trustee is entitled to the maximum percentage of his commission under §326(a) when the Trustee files his final report in this case.

### II.    FACTS AND PROCEDURAL HISTORY

On November 15, 2017, the Debtor filed for relief under Chapter 7 of the Bankruptcy Code. Case No. 17-17779 ECF No. ("ECF") 1. On the same date, Terry Dershaw was appointed as the Trustee in this case. ECF 2. The Debtor disclosed that she was the beneficiary of a term life insurance policy ("Policy") on the life of her ex-husband on Schedule B. Schedule B ¶ 31.

1

She also disclosed on her Statement of Financial Affairs ("SOFA") that her only source of income in 2017 was $12,672.00 from child support and $17,487.00 from disability payments. SOFA ¶ 5.

On December 13, 2017, the Trustee conducted the § 341 meeting of creditors ("Meeting"). On the same day, the Debtor amended her SOFA to disclose a debt consolidation case ("Litigation") which had been resolved in her favor prior to filing her case. ECF 11. She also amended: (1) Schedule B to reflect that she held $1,500 in a savings account related to proceeds from the Litigation and (2) Schedule C to fully exempt such proceeds. ECF 9, ECF 10. On December 14, 2017, the Trustee filed a report of no distribution ("Report") stating that there was no property available for distribution from the estate.

On January 23, 2018, the Debtor's ex-husband died. Trustee's Mot. for Turnover ("Mot.") ¶ 7. The Debtor promptly notified the Trustee of his death and, on January 30, 2018, the Trustee filed a praecipe to withdraw his Report and a notice to change the status of the case from a no-asset case to an asset case. ECF 13, ECF 14. The Trustee filed an application to retain Fox Rothschild LLP ("Fox") as counsel to represent the Trustee on January 31, 2018, which was ultimately approved by the Court on March 14, 2018. ECF 15, ECF 21. In the meantime, the Debtor amended her schedules to reflect her entitlement to receive, and exempt a small portion of, the $250,000 payable under the Policy. ECF 16, ECF 17.

Despite repeated attempts by the Debtor to obtain a copy of her ex-husband's death certificate ("Certificate"), she was unable to immediately obtain a copy of the Certificate, apparently because the marriage ended before his death. *See* Debtor's Obj. to Fee Appl. ("Debtor's Obj.") Ex. A, at 4. The Debtor was concerned about the delay in obtaining a copy of the Certificate, which was needed to make a claim under the Policy, because the survivor

2

benefits that she began receiving from Social Security for her daughter after her ex-husband died were less than the child support payments that she had been receiving while he was alive, and she was accordingly struggling to pay her bills. *Id.* at 5. On March 6, 2018, the Debtor ultimately obtained the Certificate and sent it to Fox. *Id.* at 6-8.

On March 26, 2018, Edward DiDonato ("Counsel") from Fox sent a letter to Voya Life ("Voya"), the maker under the Policy, notifying it that: the insured under the Policy was deceased, the Debtor was the beneficiary under the Policy, and all proceeds payable under the Policy were property of the Debtor's bankruptcy estate. Mot. Ex. A. Counsel requested that Voya process the claim, but Voya refused to do so. *See id.*

On April 26, 2018, Counsel filed a Motion for Turnover Pursuant to 11 U.S.C. § 542 ("Motion") requesting that the Court direct Voya to turn over the proceeds of the Policy to the Trustee. Mot. 1, ECF 23. The Motion was a simple pleading, consisting of eleven paragraphs, and merely set forth the factual background leading up to the request. It did not contain any case law or legal discussion. The Motion was uncontested and, on May 30, 2018, the Court entered an Order granting the Motion. ECF 33.

On July 2, 2018, Counsel filed an Application for Allowance of Compensation and Reimbursement of Expenses of Fox Rothschild LLP, Counsel to Trustee, for the Period January 31, 2018 through June 21, 2018 ("Application"). ECF 36. The Application sought reimbursement of fees in the amount of $18,625.00 and expenses in the amount of $14.02, and stated that Fox had "reviewed the Debtor's assets with the Trustee, investigated the life insurance benefits due the Estate, and prepared the necessary documents for turnover of the life insurance benefits." Counsel's App. 3. The Application also stated that the Trustee had approximately $260,000 on hand to pay claims totaling $82,000. *Id.*

Of the 29.2 hours billed by Fox in the Application, 24.7 hours were billed by Counsel at an hourly rate of between $660.00-$695.00. *See* Counsel's App. Ex. A. However, most of this time was spent performing nonlegal services. In fact, Counsel only spent 2.2 hours performing legal services in this case -- .5 hours drafting Fox's retention application and 1.7 hours drafting the Motion. *See id.* Counsel spent over 6 hours unsuccessfully trying to obtain a copy of the Certificate. *See id.* There were numerous entries billed by Counsel for: correspondence and calls to Voya, the Debtor, and Debtor's counsel regarding the Policy; review of claims and calls/correspondence with creditors; ministerial acts such as preparation of certificates of no objection; and review of the Debtor's financial management certificate, Counsel's retention order, and the discharge order. *See id.*

On July 13, 2018, the Debtor filed a pro se letter objection ("Objection) to the Application. ECF 37. The Debtor vehemently objected to the amount requested in the Application based upon her view that her case was not complex, there was no novelty involved in the representation of the Trustee, and no special legal expertise was needed to handle the case. Debtor's Obj. 11. In addition, the Debtor argued that Fox improperly seeks compensation for services that should have been performed by the Trustee as part of his statutory duties under §704(a). *Id.* at 1-4. Specifically, the Debtor argued that the Trustee has a statutory duty to collect and liquidate assets of the estate, examine proofs of claim, investigate the financial affairs of the debtor, furnish information to parties in interest on factual matters, and file applications, and that Fox should not be reimbursed for performing any of these services. *Id.* The Debtor also argued that Counsel unnecessarily spent time trying to unsuccessfully obtain the Certificate and determine whether the proceeds from the Policy would be taxable. *Id.* at 5-7. Finally, the Debtor

4

argued that Fox should be not be reimbursed for any services performed prior to the Court's

approval of the Application. *Id.* at 4.

The Debtor also argued that she and her daughter desperately need the proceeds from the

Policy because they:

> live month to month…we have survival mode subsistence in perpetual
> stress since the beginning of 2005. We are dragged and trapped in poverty
> and hopelessness. Most precisely, I am homeless immigrant and head of a
> household with low income. I can not afford any mortgage whatsoever. I
> am unable to improve living conditions and standard…Awarding Trustee
> any or excessive fees will prevent us from moving forward, will hinder us
> greatly.

*Id.* at 7.

On July 26, 2018, the United States Trustee ("UST") filed an objection ("UST

Objection") to the Application along similar lines. ECF 40. The UST argued that Fox: (1) should

not be reimbursed for services performed "which are more appropriately a trustee's

responsibility;" and (2) "failed to exercise responsible billing judgment," because certain "tasks

were performed by individuals commanding an hourly rate higher than the nature of the work

demanded." UST Obj. to Fee Appl. ("UST Obj.") 2. The Trustee asserted that Fox billed 13.5

hours of objectionable time with a total value of $8,301.50. *See id.* Ex. A.

The Debtor's attorney also filed an affidavit in support of the Objection ("Affidavit" and

together with the Objection and the UST Objection, the "Objections") and stated that the fees

were excessive for such a straightforward case which only required the Trustee to collect the

Policy and pay out the claims in the case. ECF 41.

The Court held a hearing on the Objections on August 22, 2018, with the Debtor,

Counsel, and the UST in attendance. ECF 42. The Trustee did not attend the hearing, and

Counsel did not provide any evidence or testimony during the hearing.[1] The Debtor continued to argue the points made in her Objection, namely that Fox was seeking reimbursement for services that should have been performed by the Trustee as part his statutory duty under § 704(a), that the fees requested in the Application were excessive and unreasonable, and that fees should not be allowed for any services performed prior to the date that the Application was approved.

In response, Counsel argued that the Trustee had specifically asked him to perform each of the services undertaken by Fox and that he had done exactly what the Trustee had asked him to do. In response to the Court's inquiry about whether Counsel should have raised the appropriateness of performing some of the nonlegal services with the Trustee at the outset of the case, Counsel responded that he would never question the Trustee about that and that he felt that he had a duty to his client, the Trustee, to perform whatever service the Trustee requested him to perform in connection with this case. He also suggested that there was a heightened need for scrutiny of the Debtor's case because she initially failed to list the Litigation on her SOFA and the related proceeds from such Litigation on her Schedules. At the conclusion of the hearing, the Court took the matter under advisement.

### III.    DISCUSSION

The Debtor and the UST argue that Counsel should not be compensated for any service that should have been performed by the Trustee as part of his statutory duties under § 704(a). They also object to the fees as being unnecessary and/or unreasonable under § 330(a) and argue that Counsel failed to exercise responsible billing judgment because certain tasks were performed at a higher hourly rate than was necessary. The Debtor was particularly concerned about the significant amount of time that was spent performing unnecessary nonlegal tasks such

---

[1] In view of the numerous, serious allegations in the Objections, it is unclear how Counsel expected to rebut the various arguments made in the Objections or why the Trustee did not attend the Hearing.

as unsuccessfully trying to obtain the Certificate. Finally, the Debtor argued that her case was straightforward and did not require the expenditure of over 29 hours to merely liquidate the Policy.[2] In response, Counsel argued that all of the services that he performed were necessary to competently represent his client, the Trustee.

The Court finds that Counsel performed many nonlegal services in the Application which should have been performed by the Trustee as part of his statutory duties under § 704(a). In addition, the Court finds that many of Counsel's time entries in the Application were not reasonable, nor were they necessary, under § 330(a).

### A. Applicable Law

#### 1. Section 704(a)

The relevant provisions of § 704(a) setting forth the Chapter 7 trustee's statutory duties provide that:

> (a) The trustee shall--
> (1) collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest;
> (2) be accountable for all property received;
> (3) ensure that the debtor shall perform his intention as specified in section 521(a)(2)(B) of this title;
> (4) investigate the financial affairs of the debtor;
> (5) if a purpose would be served, examine proofs of claims and object to the allowance of any claim that is improper;
> (6) if advisable, oppose the discharge of the debtor; and

---

[2] The Debtor also argued that Fox should not receive any compensation for services performed prior to the Court's approval of Fox's retention. However, most of the cases which address whether counsel must request nunc pro tunc approval of its retention application focus on services provided before the retention application is filed and appear to presume that, as long as the retention application is ultimately approved by the court, counsel should be compensated for services provided after the retention application is filed. *See In re Stone Creek Mechanical, Inc.*, No. 04-11255, 2004 WL 5855600, *7 (Bankr. E.D. Pa. 2004) (The court only questioned whether the services provided 17 days prior to the filing of the professional's retention application should be reimbursed.); 3 Collier on Bankruptcy P. 330.02[2b] (16th Ed. 2018) (noting that the Courts of Appeals for the Second and Eighth Circuits adhere to the rule that a professional seeking compensation may not receive compensation for work done prior to the filing of the professional's retention application.). Because Fox's retention was approved by this Court in the absence of any objection, the Court will consider reimbursing Fox for all of the legal services in the Application since those services were provided after Fox's retention application was filed.

(7) unless the court orders otherwise, furnish such information concerning the estate and the estate's administration as is requested by a party in interest.

Some of the trustee's duties under § 704(a) are clearly nonlegal and can be executed without the assistance of an attorney (e.g., investigating the debtor's financial affairs in order to conduct the § 341 meeting of creditors), while others clearly require the assistance of an attorney (e.g., filing an objection to a debtor's discharge.). However, there is a gray area involving services "which are legal in nature, but which are so closely related to the trustee's duties under §704(a) that they arguably should not be compensated." *In re King,* 546 B.R. 682, 695 (Bankr. S.D. Tex. 2016).

Because a trustee is entitled to a commission based upon the distributions that are ultimately made in a Chapter 7 case, subject to the maximum percentages set forth in § 326(a), in exchange for performing the duties listed in § 704(a), it is important to ensure that there is no "double dipping" of the bankruptcy estate assets which would occur if a trustee's attorney is improperly compensated for work that the trustee is statutorily required, and paid, to perform. In such event, the bankruptcy estate would be unnecessarily depleted by the compensation paid to the trustee's counsel for such work. In addition, the trustee would also receive a higher commission than he would be entitled to because his commission would be calculated, in part, on the improper distribution to his counsel.

Indeed, the Third Circuit has confirmed that "an attorney is not entitled to compensation for the assumption of duties of the...Trustee," and explained the underlying rationale for such principle as:

first, the estate must not be depleted through a possible duplication of charges for the same service; and second, the assumption of the...Trustee's duties by counsel would be in derogation of the statutory scheme.

8

*In re Meade Land and Development Co., Inc.*, 527 F.2d 280, 285 (3d Cir. 1975).

The Third Circuit further recognized that bankruptcy courts have "substantial latitude" in

distinguishing "the line between legal and non-legal services and between necessary legal

services and ministerial duties of the Trustee, requiring only sound business judgment." *Id.*

In making this distinction, the Court finds it helpful to contrast the legal expertise

required to represent a Chapter 7 trustee, who is statutorily required to possess a certain level of

business and legal expertise as established by the Attorney General under 28 U.S.C. § 586(a) and

set forth in 28 C.F.R. § 58.3, as opposed to a layperson. The court in *In re Lowery,* 215 B.R. 140,

141-42 (Bankr. N.D. Ohio 1997), explained that:

> [T]he duties for which the attorney may be compensated are far more
> constricted in this [Chapter 7] setting than that posited by the applicant
> here: that when a lay person employs an attorney to, say, recover an asset,
> all that accompanies that effort, including the time in investigating, letter
> writing, phone calling and the hiring of other professionals, such as
> appraisers or real estate brokers, is compensable to the attorney. Those
> activities surely fall within the ambit of § 704, the Code's defined duties of
> the trustee who obviously has the skill and expertise to perform them by
> virtue of being a member of the United States Trustee's panel of trustees.
> The trustee is simply and obviously not a lay person unschooled in the art
> and science of finding, capturing and obtaining the value of an asset, for
> example.

Given the special qualifications required to become a trustee, therefore, a trustee

"necessarily has a greater skill set than a layman in performing duties such as investigating a

debtor's financial affairs or writing letters to collect debts." *In re King*, 546 B.R. at 696. As a

result, courts have held that a trustee's attorney may only receive compensation for services

which overlap with the trustee's when "unique difficulties" arise. *In re J.W. Knapp Co.*, 930 F.2d

386, 388 (4th Cir. 1991).

The court in *In re King* suggested that a trustee's attorney should not be compensated for

drafting and filing an objection to a proof of claim that contains no supporting documentation

9

because it would be such a ministerial task. *In re King,* 546 B.R. at 695; *see also In re Haggerty,* 215 B.R. 84, 86 (Bankr. M.D. Fla. 1997) ("[T]he making of routine objections to claims in this case constitutes performance of the trustee's duties, and is not compensable as professional time."). At the very least, the trustee should make an initial review of the claims filed in a case before involving his counsel. Similarly, a trustee's attorney should not be compensated for routine communications with creditors. *See In re Minton Group, Inc.*, 33 B.R. 38, 41 (Bankr. S.D.N.Y. 1983) ("[T]he court must be mindful that routine and ministerial services, such as telephone calls and correspondence with creditors and information seekers should not be compensated at billable rates attributable to truly legal services."). The court in *In re Virissimo*, 354 B.R. 284, 293 (Bankr. D. Nev. 2006), held that a trustee's counsel failed to establish that unique difficulties existed which required the expertise of a lawyer in the performance of "records searches, the deed orders, the communications or the review of the pending lawsuits."

## 2. Section 330(a)

Fox seeks compensation pursuant to § 330(a), which provides for an award to professionals, such as counsel to the trustee, for "reasonable compensation for actual, necessary services rendered," and which also states:

> (3) In determining the amount of reasonable compensation to be awarded ... the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including--
> (A) the time spent on such services;
> (B) the rates charged for such services;
> (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
> (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

(F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

Even if objections to fee applications are not filed, courts have an independent responsibility to insure that fees awarded under § 330(a) are fair and reasonable. *In re Busy Beaver Bldg. Centers, Inc.*, 19 F.3d 833, 841 (3d Cir. 1994) ("Beyond possessing the power, we think the bankruptcy court has a duty to review fee applications, notwithstanding the absence of objections by the United States trustee ('UST'), creditors, or any other interested party, a duty which the Code does not expressly lay out but which we believe derives from the court's inherent obligation to monitor the debtor's estate and to serve the public interest."). However, courts do not need to render detailed findings in reviewing fee applications. *Id.* at 844–45. Furthermore, determinations of reasonableness under § 330(a) clearly are within a bankruptcy court's discretion. *See, e.g., Zolfo, Cooper & Co. v. Sunbeam–Oster Co.,* 50 F.3d 253, 257-58 (3d Cir. 1995); *In re Busy Beaver*, 19 F.3d at 841 (section 330(a) "imbues the court with discretionary authority").

The Third Circuit has directed courts to use the lodestar approach in determining an allowance of reasonable fees under § 330(a) for a professional, such as an attorney. *See In re Busy Beaver*, 19 F.3d at 849, 856. In applying the lodestar method, courts multiply the prevailing market hourly rate, taking into account the experience of the professional and the nature of the professional services provided, by the number of hours reasonably expended in providing those services. *Id.* at 849 n. 21 ("Under the lodestar analysis, a court first establishes a reasonable hourly rate (corresponding to the value of the services and the cost of comparable services in §330(a)(1)) for each set of compensable services (corresponding to the nature of the services in §330(a)(1)), and then multiplies each rate by the reasonable number of hours of compensable

11

work included in each respective set (corresponding to the time and extent of the services in §330(a)(1)).").

A bankruptcy court should consider the benefit achieved by the services rendered in applying § 330(a), since there is an "express mandate of 'benefit-to-the-estate' imposed by §330." *Ferrara & Hantman v. Alvarez (In re Engel)*, 124 F.3d 567, 573, 577 (3d Cir. 1997). However, § 330(a)(3) merely requires that "the services be reasonably likely to yield a benefit to the estate at the time they were provided; not that they actually do so." *In re Mushroom Transp. Co.,* 486 B.R. 148, 163 (Bankr. E.D. Pa 2013). In determining the reasonableness of an hourly rate, "a bankruptcy judge may use his own knowledge of the market and of the professional's experience to determine the appropriate hourly rate." *Id.* at 164; *see also In re Busy Beaver*, 19 F.3d at 854 ("Although this case does not present us with a pressing need to define precisely how a bankruptcy court should verify the market rates, if any, for select clerical services, we observe that certainly a bankruptcy judge's experience with fee petitions and his or her expert judgment pertaining to appropriate billing practices, founded on an understanding of the legal profession, will be the starting point for any analysis.").

### B. Applying § 704(a) and § 330(a) to the Application

Turning to the Application, the Court finds that the Trustee had one relatively simple task to perform in this case -- to liquidate the Policy. The only legal work that needed to be performed in connection with this task was the drafting and filing of the Motion. All of the nonlegal work associated with performing this task (such as the multiple calls, correspondence, and internet and document searches) should have been performed by the Trustee, pursuant to § 704(a), who was more than capable, and therefore responsible, to make calls and draft correspondence to the Debtor, her counsel, and Voya. As a result, the Court will deny all nonlegal work performed by

Fox in connection with the liquidation of the Policy (see Exhibit A, which strikes all nonlegal time entries, labeled as "NL," totaling 14.3 hours at a value of $8,696.5.).[3]

The Court will also strike all of the time entries associated with Counsel's review of the claims register and correspondence or calls with creditors in this case because these services also clearly fall within the Trustee's statutory duties pursuant to § 704(a)(5) and (7) (see Exhibit A, which strikes all claims related time entries, labeled as "C," totaling 1.5 hours at a value of $990.00.).

Applying § 330(a) to the remaining time charged by Counsel, the Court finds that Counsel recorded certain duplicative entries which the Court will strike as unreasonable and unnecessary (see Exhibit A, which strikes all duplicative time entries, labeled as "D," totaling .6 hours at a value of $396.00.). The Court also will reduce the hourly rate charged by Counsel for performing ministerial acts, such as preparing and filing certificates of no response. Given Counsel's hourly rate of over $600 and the simplicity of these tasks, it would be more appropriate for a paralegal, with a far lower hourly rate, to perform such tasks (see Exhibit A, which reduces the hourly rate charged for ministerial time entries to the paralegal's rate. These entries are labeled as "P" totaling .5 hours at a value of $330.00.). In addition, there was no reason for Counsel to review the Debtor's financial management certificate (twice), his retention order (twice), or the discharge order. Therefore, the Court will strike all time entries for these types of unnecessary tasks (see Exhibit A, which strikes all unnecessary time entries, labeled as "U," totaling .4 hours at a value of $264.00.).

---

[3] Of the 14.3 nonlegal hours billed by Fox in connection with liquidating the Policy which the Court is striking, Counsel spent 12.5 hours at $660/hour which totals $8,250.00; D'Ambrosio spent 1.1 hours at $320/hour which totals $352.00; and Rose spent .7 hours at $135/hour which totals $94.50.

Although the Court will allow some of the time spent by Counsel reviewing the Schedules and SOFA in order to become familiar with the case, the Court finds it appropriate to reduce many entries for unnecessary time spent performing such tasks (see Exhibit A, which reduces all unnecessary time entries, labeled as "R," totaling .2 hours at a value of $132.00.). In addition, the Court will reduce the time spent by Counsel drafting the Motion (1.7 hours) as unreasonable because the pleading merely set forth the basic factual background in the case (in eleven one-sentence paragraphs) and contained no legal analysis (see Exhibit A, which reduces these legal time entries, labeled as "LR," totaling 1.2 hours at a value of $792.00.). Taking all of these deductions into consideration, the Court will reduce Fox's reimbursement request by $11,599.00.

At the hearing, the only other argument made in defense of the Application by Counsel was the alleged heightened need for scrutiny of the Debtor's case based upon the Debtor's failure to list the Litigation on her Schedules and SOFA. This argument makes no sense.

First, although the Debtor initially may not have listed the $1,500 that she had on hand as a result of the undisclosed Litigation, the Debtor was entitled to fully exempt those modest proceeds. *See* Am. Sch. C; 11 U.S.C. § 522(d)(5). More importantly, the Debtor disclosed the Policy at the outset of her bankruptcy case and immediately notified the Trustee when her ex-husband died. There was, therefore, no need for any heightened scrutiny in this case regarding the Debtor's actions.

Second, even if heightened scrutiny was warranted in this case, it would not justify Counsel spending significant time performing unnecessary nonlegal tasks. In particular, there was no reason for Counsel to spend over 6 hours trying to unsuccessfully obtain a copy of the

14

Certificate. It was the Trustee's responsibility to perform whatever nonlegal tasks were necessary to liquidate the Policy.

Going forward, this Court expects that no Chapter 7 trustee will ask its counsel to perform, or seek reimbursement for, services which are statutorily required to be performed by the Chapter 7 trustee under § 704(a).

Finally, it is unclear to the Court exactly what services were performed by the Trustee in this case and, therefore, whether the Trustee is entitled to his maximum commission under §326(a). As a result, the Trustee should be prepared to appear at the hearing on the Final Audit in this case and testify as to the services he performed in order to justify payment of such commission.

## IV.    CONCLUSION

Based upon the foregoing, the Court will allow compensation of $7,026.00 and reimbursement of expenses of $14.02 for a total award of $7,040.02 to Fox under its Application. An order will follow.

Date: September 19, 2018

_____
Honorable Ashely M. Chan
United States Bankruptcy Judge

# Exhibit A



# Fox Rothschild LLP

### ATTORNEYS AT LAW

2000 Market Street, 20th Floor   Philadelphia, PA 19103-3222
Tel 215.299.2000   Fax 215.299.2150   www.foxrothschild.com

TAX I.D. NO. 23-1404723

TERRY P. DERSHAW
CHAPTER 7 TRUSTEE
P.O. BOX 556
WARMINSTER, PA 18974

| | |
|---|---|
| Invoice Number | 2217351 |
| Invoice Date | 06/30/18 |
| Client Number | 026658 |
| Matter Number | 00209 |

Re: YOVTCHEVA, SILVIA

**FOR PROFESSIONAL SERVICES RENDERED THROUGH 06/21/18:**

| Date | Attorney | Description | Hours |
|---|---|---|---|
| 01/31/18 | DIDONATO | TELEPHONE CALL FROM TRUSTEE RE: RETENTION AND CASE STATUS | 0.3 |
| 01/31/18 | DIDONATO | REVIEW DOCKET, PLEADINGS, AND INSURANCE INFO FROM TRUSTEE | 0.3 |
| 01/31/18 | DIDONATO | PREPARE APPLICATION TO EMPLOY FOX AS COUNSEL TO TRUSTEE | 0.3 |
| 01/31/18 | DIDONATO | REVIEW CORRESPONDENCE FROM TRUSTEE RE: TAXABLE STATUS OF POLICY | 0.2 |
| 02/01/18 | DIDONATO | TELEPHONE CALL FROM TRUSTEE RE: DEATH NOTICE | 0.2 |
| 02/01/18 | DIDONATO | REVIEW FILE AND DOCKET | 0.3 |
| 02/01/18 | DIDONATO | TELEPHONE CALL FROM TRUSTEE RE: DISCHARGE DEADLINE | 0.3 |
| 02/01/18 | DIDONATO | REVIEW AMENDED SCHEDULES A/B | 0.3 . 1 |
| 02/01/18 | DIDONATO | PREPARE APPLICATION TO EMPLOY FOX | 0.2 |
| 02/05/18 | DIDONATO | REVIEW LETTER FROM TRUSTEE RE: CASE HISTORY | 0.2 |
| 02/05/18 | DIDONATO | REVIEW AMENDED SCHEDULE C - EXEMPTIONS | 0.2 . 1 |
| 02/05/18 | DIDONATO | TELEPHONE CALL TO TRUSTEE RE: DECEDENT'S ESTATE | 0.2 |
| 02/06/18 | DIDONATO | REVIEW CORRESPONDENCE FROM DEBTOR AND VOYA FINANCIAL RE: DEATH POLICY ON LIFE OF NON-DEBTOR | 0.4 |
| 02/08/18 | D'AMBROSIO | FOLLOW UP RE INFORMATION ON DEATH OF SERIGNE THIOUNE | 0.1 |

*(handwritten margin notations: R, R, NL, NL)*

ACTIVE\58952859.v1-7/2/18

| Date | Attorney | Description | Hours |
|------|----------|-------------|-------|
| 02/08/18 | DIDONATO | REVIEW INTERNET AND LOOK FOR DEATH CERTIFICATE | 0.3 |
| 02/08/18 | DIDONATO | MEETING WITH M. MARANSKY, ESQ. RE: DEATH CERTIFICATE AND REQUEST FOR INSURANCE PROCEEDS | 0.5 |
| 02/08/18 | DIDONATO | TELEPHONE CALL FROM TRUSTEE RE: NEED FOR CERTIFICATE AND PROOF OF DEATH | 0.3 |
| 02/08/18 | ROSE | TELEPHONE CALL TO THE PHILADELPHIA REGISTER OF WILLS RE: PROBATE | 0.2 |
| 02/09/18 | D'AMBROSIO | FOLLOW UP RE ADDITIONAL INFORMATION FOR DECEASED, SERIGNE THIOUNE, TO OBTAIN DEATH CERTIFICATE, POSSIBLE PROBATE INFORMATION, ETC. | 0.5 |
| 02/09/18 | DIDONATO | MEETING WITH D'AMBROSIO RE: DEATH CERTIFICATE AND STATUS | 0.3 |
| 02/09/18 | ROSE | TELEPHONE CALL TO THE PHILADELPHIA REGISTER OF WILLS RE: PROBTE; RESEARCH OBITUARY/ DEATH NOTICE FOR S. THIOUNE | 0.5 |
| 02/12/18 | DIDONATO | LETTER TO TRUSTEE RE: SOCIAL SECURITY NUMBER AND PROOF OF DEATH | 0.2 |
| 02/12/18 | DIDONATO | REVIEW FILE AND PREPARE CNO RE: RETENTION | 0.3 |
| 02/13/18 | D'AMBROSIO | FOLLOW UP RE LOCATING DEATH INFORMATION FOR INSURANCE | 0.2 |
| 02/13/18 | DIDONATO | LETTER TO D'AMBROSIO RE: DEATH CERTIFICATE | 0.2 |
| 02/13/18 | DIDONATO | TELEPHONE CALL TO TRUSTEE RE: STATUS | 0.2 |
| 02/14/18 | DIDONATO | REVIEW LETTER FROM D'AMBROSIA RE: THOUNE DEATH CERTIFICATE | 0.2 |
| 02/19/18 | DIDONATO | REVIEW LETTER FROM DEPT. OF EDUCATION RE: CLAIM AND STATUS | 0.2 |
| 02/19/18 | DIDONATO | PREPARE LETTER TO INSURER RE: DEATH OF INSURED | 0.3 |
| 02/20/18 | DIDONATO | TELEPHONE CALL FROM J. NELSON RE: INSURANCE POLICY | 0.3 |
| 02/20/18 | DIDONATO | TELEPHONE CALL TO TRUSTEE RE: LETTER TO INSURER | 0.3 |
| 02/20/18 | DIDONATO | REVIEW FILE AND DEATH NOTICE AND PREPARE LETTER TO NELSON OF VOYA FINANCIAL RE: DEATH BENEFIT | 0.4 |
| 02/22/18 | D'AMBROSIO | REVIEW OBITUARY INFORMATION FOR THIOUNE; REVIEW DEATH CERTIFICATE APPLICATION INFORMATION; DISCUSSION RE POSSIBLE WAYS TO OBTAIN CERTIFIED COPY OF DEATH CERTIFICATE | 0.3 |
| 02/22/18 | DIDONATO | REVIEW LETTER FROM NELSON, VOYA INSURANCE, RE: DEATH BENEFIT | 0.2 |
| 02/22/18 | DIDONATO | TELEPHONE CALL FROM AND LETTER TO D'AMBROSIO RE: NEED FOR DEATH CERTIFICATE | 0.3 |

| | Date | Attorney | Description | Hours |
|---|---|---|---|---|
| NL | 02/22/18 | DIDONATO | TELEPHONE CALL TO TRUSTEE RE: ISSUES AND DELAYS | 0.3 |
| NL | 02/22/18 | DIDONATO | LETTER TO DEBTOR'S COUNSEL RE: DEATH CERTIFICATE | 0.1 |
| NL | 02/23/18 | DIDONATO | LETTER TO CATALDO, ESQ. RE: DEATH AND BIRTH DATES OF INSURED | 0.2 |
| NL | 02/23/18 | DIDONATO | LETTER TO TRUSTEE RE: DEATH AND BIRTH DATES OF INSURED | 0.2 |
| NL | 02/26/18 | DIDONATO | REVIEW LETTER FROM CATALDO, ESQ. AND LETTER FROM DEBTOR RE: THIOUNE DEATH AND BIRTH DATES | 0.2 |
| NL | 02/26/18 | DIDONATO | TELEPHONE CALL TO TRUSTEE RE: CATALDO'S RESPONSE | 0.2 |
| NL | 02/27/18 | DIDONATO | REVIEW LETTER FROM TRUSTEE RE: THIOUNE | 0.2 |
| NL | 02/27/18 | DIDONATO | TELEPHONE CALL TO TRUSTEE RE: NEED FOR THIOUNE'S SOCIAL SECURITY NUMBER | 0.3 |
| | 02/27/18 | DIDONATO | REVIEW FILE AND EXEMPTIONS FOR OBJECTION DEADLINE | 0.3 |
| NL | 03/01/18 | DIDONATO | LETTER TO CATALDO, ESQ. RE: STATUS OF DEATH CERTIFICATE | 0.2 |
| NL | 03/09/18 | DIDONATO | TELEPHONE CALL FROM TRUSTEE RE: STATUS AND DELAYS | 0.3 |
| NL | 03/12/18 | DIDONATO | REVIEW LETTER FROM CATALDO, ESQ. RE: DEATH CERTIFICATE | 0.2 |
| NL | 03/12/18 | DIDONATO | LETTER TO CATALDO, ESQ. RE: STATUS | 0.2 |
| NL | 03/12/18 | DIDONATO | TELEPHONE CALL TO TRUSTEE RE: STATUS | 0.3 |
| U | 03/14/18 | DIDONATO | REVIEW ORDER RE: RETENTION | 0.2 |
| NL | 03/14/18 | DIDONATO | REVIEW FILE AND PREPARE DEMAND TO INSURER | 0.3 |
| NL | 03/14/18 | DIDONATO | TELEPHONE CALL TO TRUSTEE RE: RECEIPT OF DEATH CERTIFICATE | 0.2 |
| C | 03/20/18 | DIDONATO | REVIEW LETTER FROM CITIBANK RE: CLAIM AND CASE FILING | 0.2 |
| NL | 03/22/18 | DIDONATO | TELEPHONE CALL FROM TRUSTEE RE: DEATH CERTIFICATE AND CLAIM | 0.3 |
| NL | 03/26/18 | DIDONATO | LETTER TO TRUSTEE RE: W-9 AND REQUEST FOR DEATH BENEFITS | 0.3 |
| NL | 03/27/18 | DIDONATO | LETTER TO VOYA LIFE FOR INSURANCE PROCEEDS | 0.3 |
| NL | 03/27/18 | DIDONATO | TELEPHONE CALL TO TRUSTEE RE: REQUEST TO VOYA AND CASE STATUS | 0.3 |
| NL | 03/30/18 | DIDONATO | MEETING WITH TRUSTEE RE DEATH BENEFITS AND DEMAND | 0.5 |
| NL | 04/10/18 | DIDONATO | LETTER TO J. NELSON RE: VOYA CLAIM STATUS | 0.2 |
| NL | 04/10/18 | DIDONATO | TELEPHONE CALL FROM TRUSTEE RE: STATUS | 0.1 |

| Date | Attorney | Description | Hours |
|---|---|---|---|
| 04/17/18 | DIDONATO | TELEPHONE CALL TO TRUSTEE RE: NELSON OF VOYA AND STATUS | 0.2 |
| 04/17/18 | DIDONATO | REVIEW FILE RE: DEMAND LETTER TO VOYA RE TURNOVER | 0.3 |
| 04/18/18 | DIDONATO | TELEPHONE CALL TO TRUSTEE RE: MOTION FOR TURNOVER | 0.3 |
| 04/18/18 | DIDONATO | PREPARE MOTION FOR TURNOVER AGAINST VOYA | 0.7, 5 |
| 04/23/18 | DIDONATO | TELEPHONE CALL TO TRUSTEE RE: LIFE INSURANCE PROCEEDS AND STATUS | 0.3 |
| 04/25/18 | DIDONATO | REVIEW INSURANCE INFORMATION | 0.4 |
| 04/25/18 | DIDONATO | REVISE MOTION FOR TURNOVER FOR LIFE INSURANCE BENEFITS | 0.7 |
| 04/25/18 | DIDONATO | TELEPHONE CALL TO TRUSTEE RE: MOTION FOR TURNOVER | 0.2 |
| 04/25/18 | DIDONATO | REVIEW AND REVISE MOTION FOR TURNOVER; LETTER TO TRUSTEE RE: SAME | 0.3 |
| 04/26/18 | DIDONATO | TELEPHONE CALL FROM J. NELSON, VOYA, RE: DELAY AND STATUS | 0.2 |
| 04/26/18 | DIDONATO | TELEPHONE CALL TO TRUSTEE RE: PROCESS OF CLAIM | 0.2 |
| 04/27/18 | DIDONATO | REVIEW LETTER FROM K. PIKE, VOYA, RE: CLAIM STATUS | 0.2 |
| 04/27/18 | DIDONATO | TELEPHONE CALL TO TRUSTEE RE: LAWSUIT | 0.3 |
| 04/27/18 | DIDONATO | REVIEW LETTER FROM J. NELSON, VOYA, RE: LAWSUIT | 0.2 |
| 04/30/18 | DIDONATO | TELEPHONE CALL TO TRUSTEE RE: STATUS AND MOTION FILED | 0.3 |
| 05/01/18 | DIDONATO | REVIEW ORDER FROM K. PIKE OF VOYA RE: COURT ORDER FOR TURNOVER | 0.2 |
| 05/02/18 | DIDONATO | REVIEW LETTER FROM BANK OF AMERICA RE: STATUS AND CLAIM | 0.2 |
| 05/04/18 | DIDONATO | REVIEW OF DOCKET AND TELEPHONE CONFERENCE WITH TRUSTEE RE BAR DATE | 0.2 |
| 05/04/18 | DIDONATO | TELEPHONE CALL TO TRUSTEE RE: STATUS | 0.2 |
| 05/04/18 | DIDONATO | REVIEW OF DOCKET AND TELEPHONE CALL TO TRUSTEE RE: BAR DATE | 0.2 |
| 05/07/18 | DIDONATO | TELEPHONE CALL TO TRUSTEE RE: BANK OF AMERICA CLAIM | 0.1 |
| 05/08/18 | DIDONATO | REVIEW CLAIMS DOCKET FOR CALL WITH TRUSTEE | 0.3 |
| 05/08/18 | DIDONATO | TELEPHONE CALL FROM CREDIT CARD COMPANY RE: STATUS OF CASE | 0.2 |
| 05/09/18 | DIDONATO | REVIEW FILE FOR STATUS AND CALL WITH TRUSTEE | 0.3 |
| 05/09/18 | DIDONATO | TELEPHONE CALL FROM TRUSTEE RE: STATUS | 0.3 |

| Date | Attorney | Description | Hours |
|------|----------|-------------|-------|
| 05/09/18 | DIDONATO | REVIEW LETTER FROM CARRIER RE: PAYMENT | 0.1 |
| 05/11/18 | DIDONATO | REVIEW FILE FOR CALL WITH TRUSTEE | 0.4 |
| 05/11/18 | DIDONATO | REVIEW DEBTOR'S FINANCIAL MANAGEMENT CERTIFICATE | 0.1 |
| 05/14/18 | DIDONATO | PREPARE CNO RE: TURNOVER MOTION AGAINST VOYA | 0.2 |
| 05/14/18 | DIDONATO | TELEPHONE CALL TO TRUSTEE RE: TURNOVER MOTION STATUS | 0.2 |
| 05/15/18 | DIDONATO | REVIEW CERTIFICATE OF FINANCIAL MANAGEMENT COURSE | 0.2 |
| 05/18/18 | DIDONATO | REVIEW FILE AND TELEPHONE CALL WITH TRUSTEE RE: STATUS | 0.3 |
| 05/24/18 | DIDONATO | TELEPHONE CALL TO TRUSTEE RE: HEARING NEXT WEEK | 0.2 |
| 05/29/18 | DIDONATO | REVIEW DISCHARGE ORDER | 0.1 |
| 05/29/18 | DIDONATO | REVIEW FILE AND PREPARE FOR HEARING RE: VOYA INSURANCE COMPANY | 0.6 |
| 05/30/18 | DIDONATO | REVIEW COURT ORDER RE RETENTION- .20, LT MS. PIKE FROM VOYA ENCLOSING ORDER AND DEMANDING TURNOVER .3- LF PIKE RE ADDRESS AND PAYMENT STATUS .3- LT TRUSTEE RE PIKE CONTACT AND STATUS .2- TELEPHONE CONF WITH TRUSTEE RE COLLECTION AND STATUS .3 | 1.3 |
| 06/01/18 | DIDONATO | LETTER FROM MS. PIKE RE STATUS OF CHECK-2X AND LETTER FROM DERSHAW RE ORDER AND PAYMENT | 0.3 |
| 06/05/18 | DIDONATO | CALL AND LETTER FROM TRUSTEE RE RECEIPT OF INSURANCE PROCEEDS AND DISCUSSION RE TAX ON PROCEEDS | 0.4 |
| 06/05/18 | DIDONATO | CALL TO KESSLER, CPA RE TAX IMPLICATIONS AND STATUS OF CASE | 0.4 |
| 06/05/18 | DIDONATO | TELEPHONE CALL FROM TRUSTEE RE: STATUS | 0.3 |
| 06/05/18 | DIDONATO | REVIEW LETTER FROM TRUSTEE RE: PROCEEDS FROM RELIASTAR | 0.2 |
| 06/11/18 | DIDONATO | REVIEW OF FILE AND CALL WITH TRUSTEE RE CASE CLOSING | 0.3 |
| 06/20/18 | DIDONATO | TELEPHONE CALL TO TRUSTEE AND REVIEW OF DOCUMENTS RE: BANK OF AMERICA AND STUDENT LOAN | 0.3 |
| 06/21/18 | DIDONATO | LETTER TO TRUSTEE RE: CONFERENCE CALL AND STATUS | 0.1 |
| 06/21/18 | DIDONATO | TELEPHONE CALL WITH TRUSTEE RE: CLAIMS, DISTRIBUTION, AND CLOSING OF CASE | 0.4 |
| | | **TOTAL** | **29.2** |

**ATTORNEY TIME SUMMARY:**

| Attorney | Hours | Rate | Total |
|---|---|---|---|
| E. J. DIDONATO | 2.7 | $695.00 | $1,876.50 |
| E. J. DIDONATO | 24.7 | $660.00 | $16,302.00 |
| K. G. D'AMBROSIO | 1.1 | $320.00 | $352.00 |
| A. ROSE | 0.7 | $135.00 | $94.50 |
| | 29.2 | | $18,625.00 |

TOTAL PROFESSIONAL SERVICES    $18,625.00

**COSTS ADVANCED AND EXPENSES INCURRED:**

| | |
|---|---|
| PHOTOCOPYING | $11.20 |
| POSTAGE CHARGES | $2.82 |

CURRENT EXPENSES    $14.02

**TOTAL BALANCE DUE UPON RECEIPT    $18,639.02**